UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - -x

RBCI HOLDINGS, INC. f/k/a          :
RHEINGOLD BREWING COMPANY, INC.,
                                   :

                Plaintiff,         :          **MEMORANDUM DECISION**

           - against -             :          07 Civ. 2877 (DC)

                                   :
DRINKS AMERICAS HOLDINGS, LTD.,
                                   :
                Defendant.
                                   :
- - - - - - - - - - - - - - - - - -x

**APPEARANCES:**    TROUTMAN SANDERS LLP
                    Attorneys for Plaintiff
                         By:  Jason S. Oliver, Esq.
                              David J. Sheehan, Esq.
                    405 Lexington Avenue
                    New York, NY  10174

                    LAW OFFICES OF SHELDON H. GOPSTEIN
                    Attorneys for Defendant
                         By:  Sheldon H. Gopstein, Esq.
                    130 West 42nd Street, Suite 410
                    New York, NY  10036

**CHIN, D.J.**

          In 2005, plaintiff RBCI Holdings, Inc. ("RBCI"), the
exclusive licensee of the "Rheingold" trademark (the "Mark"),
sold its rights to the Mark to defendant Drinks America Holdings,
Ltd. ("Drinks") pursuant to an asset purchase agreement (the
"APA").  Drinks purportedly defaulted on its obligations under
the APA by failing to make the second required payment, but yet
it has continued to use the Mark.

          In this case, RBCI sues Drinks both for breach of the
APA and trademark infringement.  The amended complaint seeks
damages, a declaration that Drinks has committed trademark

infringement by continuing to use the Mark, and an order requiring Drinks to reassign the Mark back to RBCI.

Drinks moves to dismiss the amended complaint for lack of subject matter jurisdiction and failure to state a claim upon which relief may be granted.  For the reasons set forth below, Drinks's motion is denied.

**BACKGROUND**

**A.    The Facts**

For purposes of this motion, the facts alleged in the amended complaint are assumed to be true.  The following facts are drawn from the amended complaint and the documents incorporated by reference.

In 1997, Stroh Brewery Company ("Stroh") was the owner of exclusive rights to the Mark.  (Am. Compl. ¶ 6; LA 1).[1]  RBCI is a brewing company, formerly known as Rheingold Brewing Company, Inc.  (Am. Compl. 1).  On August 22, 1997, RBCI entered a ninety-nine-year license agreement (the "License Agreement") with Stroh for exclusive worldwide use of the Mark.  (Id. ¶ 6). Under the License Agreement, Stroh retained ownership of the Mark.  (LA ¶ 4(a)).  It also retained the "sole right" to determine whether to take action against "infringement by others" of its Mark.  (Id. ¶ 7).  At some point prior to October 2005,

---

[1]    References to "Am. Compl." are to the amended complaint.  The APA is attached to the amended complaint as Exhibit A and is cited as "APA."  The License Agreement is attached to the Gopstein Declaration as Exhibit A and is cited as "LA."

Pabst Brewing Company ("Pabst") became the successor in interest
to Stroh.  (APA ¶ 1.1).

Between August 1997 and October 2005, RBCI
manufactured, marketed, and distributed beer products bearing the
Mark.  (Am. Compl. ¶ 8).  On October 27, 2005, Drinks and RBCI
entered into the APA, whereby RBCI assigned its rights under the
License Agreement to Drinks.  (Id. ¶¶ 10-12).  Pursuant to the
APA, the purchase price was (i) $1,000,000 payable in shares of
Drinks common stock, (ii) $150,000 payable in cash, and (iii)
Drinks's assumption of certain debt.  (Id. ¶ 13; APA ¶ 3.1).

The APA required Drinks to make an initial payment of
$650,000 in shares and a second payment, one year later, of an
additional $350,000 in shares, plus $150,000 in cash.  (Am. Compl
¶¶ 14-15).  Section 3.3 of the APA stated: "[if Drinks] defaults
in its obligation hereunder to make the second installment of the
Purchase Price . . . then, subject to the provisions of the
Rheingold License and any applicable laws and regulations, the
Rheingold License shall be deemed reassigned" to RBCI.  (Id. ¶
29; APA ¶ 3.3).

Drinks did not make its second payment.  (Am. Compl. ¶
21).  On March 21, 2007, RBCI advised Drinks that it was in
default.  (Id. ¶ 23).  Drinks continued, however, to use the Mark
to market its products.  (Id. ¶ 27).

B.  **Procedural History**

On April 10, 2007, RBCI filed a complaint in this Court
on the basis of diversity jurisdiction, charging Drinks with

- 3 -

breach of contract, unfair dealing, and unjust enrichment.  In a
letter dated June 1, 2007, Drinks noted that RBCI had failed to
plead complete diversity because both parties -- as alleged in
the complaint -- were incorporated under the laws of Delaware.
On June 12, 2007, RBCI filed an amended complaint, repeating its
breach of contract claim (third count) and adding claims for
trademark infringement under the Lanham Act (second count) and
specific performance (first count).  This time, RBCI alleged that
the Court had subject matter jurisdiction over the case by virtue
of the federal trademark claim and supplemental jurisdiction over
its state law contract claim.

    This motion followed.

**DISCUSSION**

    Drinks moves to dismiss pursuant to Fed. R. Civ. P.
12(b)(1) for lack of subject matter jurisdiction on the grounds
that RBCI lacks standing to sue under the Lanham Act.  (Def. Mem.
at 3-8).  Alternatively, it moves to dismiss pursuant to Fed. R.
Civ. P. 12(b)(6) arguing that RBCI fails to state a Lanham Act
claim because the amended complaint fails to properly allege a
likelihood of confusion or an impact on interstate commerce.
(Id. at 8-11).  Finally, Drinks contends that the Court should
decline to exercise supplemental jurisdiction over RBCI's
remaining state law claims.  (Id. at 11).

    First, I consider the Rule 12(b)(1) prong of Drinks's
motion:  whether the Court has subject matter jurisdiction over
this action.  Second, I consider the Rule 12(b)(6) prong of the

motion:  whether the amended complaint sufficiently pleads a trademark infringement claim under the Lanham Act.  As set forth below, the standing issue is addressed in both prongs of the motion.

## A.    Subject Matter Jurisdiction

Federal courts have original -- but not exclusive -- jurisdiction over "any civil action arising under any act of Congress relating to . . . trademarks."  28 U.S.C. § 1338(a); see Ryan v. Volpone Stamp. Co., 107 F. Supp. 2d 369, 375 & n.3 (S.D.N.Y. 2000).  Here, RBCI invokes § 43(a) of the Lanham Act in arguing that Drinks has engaged in trademark infringement because of its continued use of the Mark.[2]

The mere fact that a trademark is implicated, however, does not mean that a dispute "arises under" the Lanham Act.  See Hamilton v. Hertz Corp., 607 F. Supp. 1371, 1374 (S.D.N.Y. 1985) (citing R.G. Barry Corp. v. Mushroom Makers, Inc., 612 F.2d 651, 658 (2d Cir. 1979)).  A breach of a contract to purchase a trademark, for example, does not necessarily give rise to a disputed federal question sufficient to confer subject matter jurisdiction.  See 6 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 32:4 (4th ed. 2008) ("McCarthy on Trademarks") (citing Dunlap v. G&L Holding Group, Inc., 381 F.3d

---

[2]    Trademark infringement claims may be brought under both §§ 32 and 43(a) of the Lanham Act.  15 U.S.C. §§ 1114, 1125(a).  Here, although the amended complaint does not specify which section RBCI is relying on, RBCI's opposition papers clarify that it is proceeding only under § 43(a).  (Pl. Mem. at 5).

1285, 1292-93 (11th Cir. 2004) (issue of ownership of trademark did not raise disputed questions of federal law sufficient to create federal question jurisdiction)).

To determine whether it has federal question jurisdiction over a claim for breach of a contract involving trademarks, a court must look to the face of the complaint: federal question jurisdiction exists if the complaint seeks a remedy expressly granted by or asserts a claim requiring construction of the Lanham Act. See Volpone, 107 F. Supp. 2d at 376-77 (citing Bassett v. Mashantucket Pequot Tribe, 204 F.3d 343 (2d Cir. 2000) (copyright)); 6 McCarthy on Trademarks § 32:4.

Drinks does not challenge subject matter jurisdiction on these general grounds, however, nor could it. On its face, the amended complaint seeks relief expressly granted under the Lanham Act (damages, a declaration that Drinks engaged in trademark infringement, and an order enjoining Drinks from further using the Mark) and it also asserts a claim requiring construction of the Lanham Act (whether an exclusive licensee can sue a subsequent purchaser of the license under the Lanham Act for trademark infringement). See Volpone, 107 F. Supp. 2d at 377. Instead, Drinks's sole basis for challenging subject matter jurisdiction is its assertion that RBCI lacks standing to bring a Lanham Act claim, the only federal cause of action asserted in the amended complaint.

Standing is raised both on Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction and on Rule

12(b)(6) motions to dismiss for failure to state a claim.  See
Rent Stabilization Ass'n v. Dinkins, 5 F.3d 591, 594 & n.2 (2d
Cir. 1993).  Standing is also analyzed both in terms of
constitutional -- or Article III -- standing as well as in terms
of statutory standing.  See, e.g., Alliance for Envtl. Renewal,
Inc. v. Pyramid Crossgates Co., 436 F.3d 82, 84 (2d Cir. 2006).
Article III standing is a matter of subject matter jurisdiction
for it goes to the existence of a "case or controversy," a
prerequisite to Article III jurisdiction.  Id. at 85; Central
States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco
Managed Care, L.L.C., 433 F.3d 181, 197-98 (2d Cir. 2005).
Hence, the proper procedure for a district court presented with a
standing motion is to consider Article III standing on a Rule
12(b)(1) motion first before considering the issues of statutory
standing that "may be closely related to, if not inextricably
entwined with," the merits.  Alliance for Envtl. Renewal, 436
F.3d at 87-88 & n.6.

        Here, Drinks does not distinguish between Article III
standing and statutory standing, but the essence of its argument
is a statutory one -- it contends that RBCI does not have
standing under the Lanham Act.  Indeed, RBCI clearly has Article
III standing in that it alleges that it "has suffered 'some
threatened or actual injury resulting from the putatively illegal
action.'"  Central States, 433 F.3d at 198 (quoting Warth v.
Seldin, 422 U.S. 490, 498 (1975)).  RBCI has alleged "personal
injury fairly traceable to the defendant's allegedly unlawful

conduct and likely to be redressed by the requested relief."
<u>Allen v. Wright</u>, 468 U.S. 737, 751 (1984).

Accordingly, I hold that the Court has subject matter
jurisdiction over this action.  Drinks's motion to dismiss
pursuant to Rule 12(b)(1) is denied.  I turn to the merits,
including the question of whether RBCI has statutory standing to
assert a Lanham Act claim.

**B.   The Merits**

First, I consider whether RBCI has sufficiently alleged
statutory standing.  Second, I consider whether the amended
complaint otherwise sufficiently alleges a claim under the Lanham
Act.

**1.   Statutory Standing**

Section 43(a) of the Lanham Act provides that "any
person who believes that he or she is or is likely to be damaged"
by the false or misleading use of a trademark may bring a civil
action against the wrongdoer.  15 U.S.C. § 1125(a)(1); <u>see</u> <u>Berni</u>
<u>v. Int'l Gourmet Rests. of Am., Inc.</u>, 838 F.2d 642, 647-48 (2d
Cir. 1988); <u>Prince of Peace Enters., Inc. v. Top Quality Food</u>
<u>Mkt.</u>, No. 07 Civ. 00349 (RJH), 2007 WL 704171, at *4 (S.D.N.Y.
Mar. 7, 2007).  The Second Circuit has long recognized that §
43(a) of the Lanham Act "entitles a broad range of commercial
parties to relief."  <u>Johnson & Johnson v. Carter-Wallace, Inc.</u>,
631 F.2d 186, 189 (2d Cir. 1980) (citing <u>Alfred Dunhill Ltd. v.</u>
<u>Interstate Cigar Co.</u>, 499 F.2d 232, 236 (2d Cir. 1974)).

One need not be the "owner" or "registrant" of a trademark to sue for infringement under § 43(a).  6 McCarthy on Trademarks § 32:12; see Christopher D. Smithers Found., Inc. v. St. Luke-Roosevelt Hosp. Ctr., No. 00 Civ. 5502 (WHP), 2001 WL 761076, at *4 (S.D.N.Y. July 6, 2001) (plaintiff need not be "owner" of mark to assert claim under § 43(a)).  Indeed, Judge Trager in the Eastern District of New York has observed that "[c]ourts have consistently recognized that this broad language [in § 43(a)] confers standing on trademark licensees." Krasnyi Oktyabr, Inc. v. Trilini Imports, No. CV-05-5359, 2007 WL 1017620, at *5 (E.D.N.Y. Mar. 30, 2007); see also Prince of Peace, 2007 WL 704171, at *4 (holding that exclusive licensee of trademarks had standing to assert false designation and description claim under § 43(a), "regardless of whether it owns the marks").

To have standing to sue under § 43(a), a plaintiff must be able to show some injury or likely injury.  "[S]omething more than a plaintiff's mere subjective belief that he is injured or likely to be damaged is required before he will be entitled even to injunctive relief." Johnson & Johnson v. Carter-Wallace, Inc., 631 F.2d at 189.  "[A]t a minimum, standing to bring a section 43 claim requires the potential for a commercial or competitive injury." Berni, 838 F.2d at 648; accord Krasnyi, 2007 WL 1017620, at *5.  The absence of actual use will not bar a Lanham Act claim where "a party has engaged in a course of conduct evidencing a 'definite intent and apparent ability to

commence use' of the marks on the product." <u>Starter Corp. v.</u>
<u>Converse, Inc.</u>, 84 F.3d 592, 595-96 (2d Cir. 1996) (quoting
<u>Golden Gulf Corp. v. Jordache Enter., Inc.</u>, 896 F. Supp. 337, 340
(S.D.N.Y. 1995)).

      Here, the amended complaint plainly alleges at least
"the potential for a commercial or competitive injury."  In fact,
the amended complaint alleges "a course of conduct evidencing a
'definite intent and apparent ability to commence use'" of the
Mark.  It alleges that in 1997 RBCI acquired a ninety-nine-year
exclusive, worldwide license to use the Mark.  (Am. Compl. ¶ 6).
It alleges further that RBCI used the Mark in commerce by
manufacturing, marketing, and distributing beer products bearing
the Mark from 1997 through October 2005, and that the Mark became
widely known through RBCI's sales, marketing, and promotional
efforts.  (<u>Id.</u> ¶¶ 7-10).  It alleges further that because of
Drinks's breach of its obligations under the ABA, RBCI is
entitled to the reassignment of the Mark and that Drinks's
continued use of the Mark "is likely to cause confusion, mistake
and deception among the general purchasing public as to the
origin of Drinks's products and is likely to deceive the public
into believing Drinks's products originate from RBCI or otherwise
are authorized by RBCI."  (<u>Id.</u> ¶¶ 20-21, 24-27, 41-46).  It
alleges that Drinks's failure to reassign the Mark to RBCI has
caused RBCI to suffer injury.  (<u>Id.</u> ¶¶ 37, 48).

      These factual allegations are sufficient to render
"plausible" RBCI's claim that it has the potential for a

commercial or competitive injury compensable under the Lanham
Act. See Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1974
(2007) (to survive 12(b)(6) motion, pleading must allege "enough
facts to state a claim for relief that is plausible on its
face"). RBCI was in fact using the Mark in commerce and had done
so for more than eight years before it sold its license to the
Mark to Drinks. This course of conduct shows -- or, at a
minimum, a finder of fact could so conclude that it shows -- that
RBCI has the present intent and apparent ability to use the Mark
if the Mark is reassigned to RBCI as the APA purportedly
requires.

Drinks argues that RBCI lacks standing to assert a
Lanham Act claim because RBCI "could not possibly show any lost
sales as a result of [its] use of the [Mark]," and that it is
Drinks -- not RBCI -- that has the exclusive right to use the
Mark. (Def. Mem. at 6). This argument, however, ignores one of
RBCI's principal claims, that the APA provides that in the event
of a default by Drinks, the rights to use the Mark are to be
reassigned to RBCI. (See Am. Compl. ¶ 19 & APA § 3.3). In
parallel situations, courts have held that a former licensee's
continued, unauthorized use of a mark after the termination of a
license may damage the goodwill and reputation associated with a
mark. See, e.g., Church of Scientology Int'l v. Elmira Mission
of Church of Scientology, 794 F.2d 38, 43 (2d Cir. 1986) ("The
unauthorized use of a mark by a former licensee invariably
threatens injury to the economic value of the goodwill and

reputation associated with a licensor's mark.").  Here, the
amended complaint alleges that the assignment of the Mark to
Drinks was revoked by virtue of Drinks's default, and that the
exclusive right to use the mark reverted to RBCI.  The amended
complaint alleges that Drinks's continued, unauthorized use of
the Mark will diminish the goodwill and reputation of the Mark,
to the detriment of the purported rightful exclusive licensee --
RBCI.  On the facts set forth in the amended complaint, this
claim is plausible.  See 6 McCarthy on Trademarks § 32:12
("Courts have held that an exclusive licensee of a mark may have
standing to sue under § 43(a) for acts which cause injury to the
licensee.") (citing cases).

        In essence, by arguing that it -- and not RBCI -- is
the exclusive licensee of the Mark, Drinks seeks a ruling on the
merits of RBCI's breach of contract claim.  This request is
premature.  Likewise, as discussed above, actual lost sales are
not required.  It is enough, for pleading purposes, that RBCI has
alleged the potential for commercial injury.  Moreover, the fact
that RBCI and Drinks are not now direct competitors does not
preclude RBCI from seeking relief.  Johnson & Johnson v. Carter-
Wallace, Inc., 631 F.2d at 190 ("indirect competitors may avail
themselves of the protection of § 43(a); the competition need not
be direct").

        Drinks notes that the License Agreement provides that
it "shall not be assigned or sublicensed by Licensee without the
prior written consent of the Licensor."  (See LA ¶ 11).  This

- 12 -

suggests that RBCI could not have originally assigned the Mark to Drinks without Stroh's (or Pabst's) consent.  It is unclear, however, whether the License Agreement permits the automatic reassignment of the license back to RBCI without the licensor's approval.  It is also unclear whether the current licensor, Pabst, continues to approve Drinks's use of the mark or consents to RBCI's current action.  Drinks may raise these issues at a later stage.  At this stage, however, dismissal is not warranted.

Drinks further contends that the cases cited by RBCI to support standing are inapposite because they involve suits brought by trademark owners/licensors, not trademark licensees. (See Def. Repl. at 7).  As previously noted, plaintiff need not own a trademark to bring an infringement action.  See 6 McCarthy on Trademarks § 32:12.  Courts have previously held that exclusive licensees could not sue subsequent licensees who had been approved by the marks' owners.  See 4 McCarthy on Trademarks § 25:30; Ballet Makers, Inc.v. U.S. Shoe Corp, 633 F. Supp. 1328, 1334-1335 (S.D.N.Y. 1986).  See also ICEE Distribs., Inc. v. J & J Snacks Food Corp., 445 F.3d 841, 846-847 (5th Cir. 2006). Those cases, however, involved licensors who had purportedly breached their exclusive licensing agreements by licensing the rights to their trademarks to multiple parties.  There, the subsequent licensees were given explicit authority to use the trademarks by the trademarks' owners.  The circumstances here are different: Drinks was given the right to use the Mark not by the licensor, but by RBCI.

- 13 -

I conclude that RBCI has sufficiently alleged statutory standing; hence, this prong of the motion to dismiss is denied.

### 2.    __Sufficiency of the Lanham Act Claim__

To state a trademark infringement claim under § 43(a), RBCI must allege that Drinks's use of the Mark 1) involves goods or services, 2) has an effect on interstate commerce, and 3) includes a false designation of origin or a false description of the goods or services likely to cause consumer confusion.  See Sun Trading Distrib. Co. v. Evidence Music, Inc., 980 F. Supp. 722, 727 (S.D.N.Y. 1997); Volpone, 107 F. Supp. 2d at 379 (citing Allen v. Nat'l Video, Inc., 610 F. Supp. 612, 625 (S.D.N.Y. 1985)).

RBCI has sufficiently pled all three elements.  The amended complaint alleges that Drinks has used the Mark in connection with the sale of goods, and engaged in commerce through the production, sale, and online marketing of goods bearing the Mark, and that the continued use of the Mark will cause confusion as to the origins of Drinks products and whether RBCI approves them.

Drinks does not dispute that its use of the Rheingold trademark is in connection with the sale of goods.  It argues, however, that RBCI fails to satisfy the final two elements of the infringement claim.  (Def. Mem. at 9-11).  First, it suggests that RBCI can demonstrate no likelihood of confusion over the source of Drinks's products because Drinks relies on the same

beer manufacturer that RBCI used.[3]  (Id. at 9).  Second, Drinks
asserts that it is not engaged in interstate commerce because it
ceased selling its products outside of New York following the
onset of litigation with one of its distributors.  (Id. at 10-
11).  These arguments do not warrant dismissal.

First, the inquiry here is whether the amended
complaint states "enough facts to state a claim for relief that
is plausible on its face."  Bell Atl. Corp., 127 S. Ct. at 1974.
Reading the inferences in RBCI's favor, the amended complaint
does.  It outlines the years RBCI spent identifying its products
with the Mark, the parties' respective rights and obligations
under the APA, and Drinks's continued use and promotion of the
Mark after its purported default.  On these alleged facts, a
likelihood of confusion is plausible.  Drinks asks to Court to
look to factual allegations beyond the amended complaint.  Such
allegations, however, are beyond the purview of a motion to
dismiss.

Second, whether the parties previously relied on the
same manufacturer is not determinative.  RBCI contends that there
will be confusion over whether RBCI is responsible for or
approves Drinks's products.  That warrants a separate inquiry
from whether Drinks's products came from the same physical source
and are thus "indistinguishable."  See Volpone, 107 F. Supp. 2d

---

[3]    Thus, Drinks adds, "because the products distributed by
[Drinks] under the trademark would be indistinguishable from the
products distributed by [RBCI] if it had the right to use the
trademark, there could be no possible consumer confusion as to
the source of the goods."  (Def. Mem. at 9).

at 380 ("[The Lanham Act] protects against confusion not only
with respect to whether the goods are what they purport to be,
but with respect to the origin, sponsorship, or approval of those
goods by another person."). Here, RBCI's factual allegations
render it plausible that Drinks's use of the Mark will cause
confusion over whether its products originate from or are
approved by RBCI.

Third, RBCI has alleged facts suggesting that Drinks
has employed promotional measures that affect interstate
commerce, including online marketing and an advertisement on its
website stating that Drinks's products are "coming soon to
markets around the world." (Am. Compl. ¶¶ 25-26; see Pl. Opp.
15-16; Oliver Decl. Ex. A). It also alleges that Drinks's
conduct will injure RBCI's own interstate reputation and goodwill
-- a reputation that it cultivated as the exclusive worldwide
licensee of the Mark. This too suggests an "effect" on
interstate commerce. See Goldsmith v. Polygram Diversified
Ventures, Inc., No. 94 Civ. 8888 (DLC), 1995 WL 614560, at *4;
5 McCarthy on Trademarks § 27:47 ("It has been held that [the
"commerce"] requirement is satisfied by plaintiff's pleading and
proof that the plaintiff used its mark in interstate commerce and
that defendant's infringement damages plaintiff's interstate
reputation."). Drawing the inferences in RBCI's favor, it is
certainly plausible that Drinks's conduct affects interstate
commerce. That Drinks may have temporarily suspended its actual

sales outside New York does not bring it beyond the scope of the Lanham Act.

## CONCLUSION

For the foregoing reasons, defendant's motion is denied. Counsel for the parties shall appear for a pre-trial conference on April 3, 2007 at 10:30 AM.

SO ORDERED.

Dated:      New York, New York
            March 20, 2008

DENNY CHIN
United States District Judge

- 17 -